UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH RHINEHART,

    Plaintiff,

                      CASE NO. 2:10-CV-10006-DT
   v.                   JUDGE STEPHEN J. MURPHY, III
                      MAGISTRATE JUDGE PAUL KOMIVES

D. SCUTT, et al.,

    Defendants.
    _____/

**REPORT AND RECOMMENDATION ON: (1) DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT (docket #33, #45 & #84); and (2) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (docket #57)**

I.    RECOMMENDATION: The Court should conclude that plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Accordingly, the Court should grant the medical defendants' motion to dismiss for failure to exhaust (docket #45) and the MDOC defendants' motion for summary judgment on the basis of lack of exhaustion (docket #84), and should dismiss the action without prejudice to plaintiff refiling if he is able to show proper exhaustion. If the Court accepts this recommendation, the Court should also deny as moot the medical defendant's motion to dismiss on the merits (docket #33) and plaintiff's motion for summary judgment on the merits (docket #57).

II.    REPORT:

A.    *Procedural Background*

Plaintiff Kenneth A. Rhinehart is a state prisoner incarcerated that the G. Robert Cotton Correctional Facility in Jackson, Michigan. Plaintiff commenced this action on January 4, 2010, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff filed an amended

complaint on January 27, 2010. Named as defendants are: D. Scutt, Warden at the Cotton Correctional Facility; B. Gardon, Health Unit Manager; medical records custodian B. Clement; Nurse Supervisor C. Iver; Registered Nurse K. Hamblin; J. Potter, the official responsible for the managed care of plaintiff; Prison Health Services (PHS), a private corporation that provides health services to prisoners; and Drs. V. Stevenson, P. Vemuri, and Adleman, PHS employees who provided care to petitioner. Defendants Scutt, Gardon, Clement, Iver, and Hamblin will be referred to as the "MDOC defendants," and defendants PHS, Stevenson, Vemuri, and Adleman will be referred to as the "medical defendants."

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, plaintiff contends that defendants failed to appropriately treat an abdominal condition which caused pain and discomfort. He alleges that he first complained on August 9, 2009, while incarcerated at the Alger Maximum Correctional Facility. At that time he was seen by a nurse, who prescribed a laxative and scheduled blood work and a doctor visit. Plaintiff was seen by Dr. Aster Berhane on August 12, who noted a palpable mass 12-14 centimeters in diameter near the epigastric area. Dr. Berhane suspected a cancerous growth. Beginning at this time and continuing through October 2009, plaintiff received various consultations with Dr. Berhane and with outside doctors. Plaintiff's treating doctors recommended further oncology consultation as well as a liver biopsy. It was eventually determined to transfer petitioner to the Cotton Correctional Facility to better serve his medical needs. *See* Amended Compl., ¶¶ 15-29.

Plaintiff arrived at the Cotton Correction Facility on October 27, 2009. He alleges that upon his arrival, he was not seen by health services within 24 hours, nor within the 14 days required by

MDOC Policy Directive 03.04.100.  On November 2, he submitted a health services kite complaining of increasing pain in his liver area, but received no response. *See id*., ¶¶ 30-31.  He was scheduled to be seen at health services on November 6, but the appointment was canceled.  *See id*., ¶ 32.  He sent a second kite on November 16, requesting a visit with an oncologist and a liver biopsy, as had been approved while he was incarcerated at the Alger Maximum Correctional Facility.  He received no response to this request. *See id*., ¶ 33.  Plaintiff alleges that he also sent a letter to the health care administrator, but received no response. *See id*., ¶ 34.  On December 4, 2009, he filed a grievance about the treatment of his liver fibrosis, the failure of prison officials to perform an intake health screen, and the failure to provide him with an oncology consult or liver biopsy.  Plaintiff also asked about a liver transplant, and complained of increasing pain in his liver which was exacerbated by his work assignment.  On December 8, defendant Hamblin responded to the grievance, indicating that plaintiff's request was routine, not urgent, and that an intake health screen first had to be conducted. *See id*., ¶¶ 35-36.  On both December 10 and December 11, plaintiff was placed on the health care call-out for an intake screening, but the call-outs were cancelled. *See id*. at 37-38.  On December 15, defendant Gardon filled out a progress note indicating that plaintiff had been scheduled twice for an intake screen, but that plaintiff was not seen for an unknown reason. *See id*., ¶ 39.  On December 30, nurse Joy Ryan filled out an orders summary form indicating that plaintiff should be seen by defendant Stevenson by January 5, 2010.  However, petitioner did not see Dr. Stevenson.  Rather, on January 4, 2010, plaintiff was seen by defendant Vemuri, who ordered lab tests to be done. *See id*., ¶ 40-41.  On January 7, plaintiff filed a grievance against defendant Vemuri, complaining that Vemuri had not adequately addressed his pain issues.  The grievance was rejected on January 8 as untimely. *See id*., ¶¶ 42-43.  On January 12, plaintiff

filed a formal complaint with Chief Medical Officer George Pramstaller. *See id*., ¶ 44.

Plaintiff alleges that he "has repeatedly requested to be seen by health services here at Cotton Facility due to his ever increasing severe pain and deteriorating condition. The Plaintiff has repeatedly kited and expressed concerns about not being scheduled for healthcare in-take callout, because without that he can't see a doctor about his pain or be scheduled for an appointment to be seen by an oncologist or liver specialist for his life threatening condition." *Id*., ¶ 45. He contends that defendants' actions and omissions constitute deliberate indifference to his serious medical needs amounting to cruel and unusual punishment under the Eighth Amendment. *See id*., ¶¶ 46-55. Plaintiff seeks declaratory and injunctive relief; $600,000 dollars in compensatory damages; and $640,000 in punitive damages.

This Report addresses four pending motions filed by the parties. First, on March 30, 2010, the medical defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) or alternatively for summary judgment pursuant to FED. R. CIV. P. 56. The medical defendants argue that plaintiff's complaint fails to allege a deliberate indifference claim under the Eighth Amendment, and that the medical records show that plaintiff received adequate treatment for his condition. Second, on May 6, 2010, the medical defendants filed a second motion to dismiss, arguing that plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Third, the MDOC defendants filed a motion for summary judgment on July 28, 2010, arguing both that plaintiff's claims are unexhausted and that they are entitled to summary judgment on the merits. Plaintiff filed various responses to these motions on June 11, July 15, and August 18, 2010. Fourth, on May 25, 2010, plaintiff filed his own motion for summary judgment.

B.      *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than

5

present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.   *Analysis*

Defendants first argue that plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Pursuant to the Prison Litigation Reform Act (PLRA), inmates challenging their conditions of confinement must exhaust their administrative remedies before pursuing a federal civil rights action. Specifically, the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In order to properly exhaust a civil rights claim, a prisoner must comply with the prison system's "procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). As the Supreme Court recently explained, the scope of

a prisoner's obligation to exhaust is defined not by the PLRA itself, but by the prison's grievance procedures:

> [T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones v. Bock*, 549 U.S. 199, 218 (2007) (citations omitted).

Michigan provides for a three-step grievance procedure. A Step I grievance is directed to the Step I Grievance Coordinator at the facility in which the prisoner is incarcerated. If the prisoner is dissatisfied with the Step I response, he may file a Step II appeal to the Warden of the facility. If the prisoner is again dissatisfied with the Step II response, he may file a Step III appeal to the Director of the Department of Corrections or her designee. *See* MICH. DEP'T OF CORRECTIONS POLICY DIRECTIVE 3.02.130(V), (BB), (FF) (effective July 9, 2007). The Policy Directive provides that a prisoner must include "the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id*., § (R).

The facts relating to plaintiff's exhaustion of administrative remedies are not in dispute. Although plaintiff alleges that he submitted numerous letters to prison officials regarding the lack of treatment for his liver condition following his transfer to the Cotton Facility, he filed only two grievances relating to that care. On December 4, 2009, plaintiff filed a grievance complaining that nothing had been done to treat his condition since his transfer, nor had his condition been monitored. *See* Pl.'s Mot. for Summ. J., Decl. of Pl. in Supp. of Summ. J., ¶ 20 & Ex. Q; Medical Def.s' Mot.

to Dismiss dated 5/6/10, Ex. D; MDOC Def.s' Mot. for Summ. J., Ex. B. That grievance was denied as untimely on January 6, 2010. *See* Pl.'s Mot. for Summ. J., Decl. of Pl. in Supp. of Summ. J., ¶ 21 & Ex. X; Medical Def.s' Mot. to Dismiss dated 5/6/10, Ex. D; MDOC Def.s' Mot. for Summ. J., Ex. C. Plaintiff filed this suit on January 4, 2010. On January 8, 2010, plaintiff filed a Step II appeal. *See* Pl.'s Mot. for Summ. J., Decl. of Pl. in Supp. of Summ. J., ¶ 28 & Ex. Q; Medical Def.s' Mot. to Dismiss dated 5/6/10, Ex. D; MDOC Def.s' Mot. for Summ. J., Ex. D. The Step II appeal was denied on January 11, 2010. Medical Def.s' Mot. to Dismiss dated 5/6/10, Ex. D; MDOC Def.s' Mot. for Summ. J., Ex. D. Plaintiff's Step III appeal was received by the MDOC on February 18, 2010, and denied on March 31, 2010. *See* MDOC Def.s' Mot. for Summ. J., Ex. G. On January 7, 2010, after the instant suit had been filed, plaintiff filed a second grievance. This grievance specifically challenged the cancellation of some of his pain medication. *See* MDOC Def.s' Mot. for Summ. J., Ex. E. That grievance was upheld on January 20, 2010. *See id.*, Ex. F.

Ordinarily, these grievances would be sufficient to constitute exhaustion under § 1997e(a). Plaintiff's first grievance was, ultimately, appealed through Step III, and his second grievance was resolved in his favor. The problem here, however, is that plaintiff's Step II and Step III appeals on the first grievance, and the filing of the second grievance, all occurred after he filed his complaint in this action. The exhaustion statute provides that "[n]o action shall be brought" until exhaustion is completed. 42 U.S.C. § 1997e(a). The Sixth Circuit has held that this "plain language of the statute makes exhaustion a precondition to filing an action in federal court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *see also*, *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). Nor is the Sixth Circuit alone in this reading of § 1997e(a); on the

contrary, there is a "unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi v. United States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006); *see also*, *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003); *McKinney v. Cary*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam); *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002); *Jackson v. District of Columbia*, 254 F.3d 262, 268-69 (D.C. Cir. 2001); *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 534-35 (9th Cir. 1999). "Now that the MDOC has responded to Plaintiff's Step III grievance, Plaintiff's administrative remedies have been exhausted. Regardless, the Court must dismiss Plaintiff's claim, as Plaintiff cannot perfect the exhaustion requirement during the pendency of his case." *Ross v. Duby*, No. 1:09-CV-531, 2010 WL 3732234, at *1 (W.D. Mich. Sept. 17, 2010). Such a dismissal is without prejudice to plaintiff refiling his action once he can properly show exhaustion under § 1997e(a). *See Freeman*, 196 F.3d at 645.

In his response to the medical defendants' motion to dismiss, plaintiff offers two arguments in his attempt to overcome this conclusion. First, he essentially argues that exhaustion would have been futile once his Step I grievance was rejected as untimely. *See* Pl.'s Resp. to Def.s' May 6, 2010 Mot. to Dismiss, at 4 ("At this point plaintiff believed the state official, and felt that his grievance was rejected and that the state would take no further action concerning his grievance."). This argument is without merit. In the first place, the mere fact that the grievance had been rejected on a procedural basis does not render further review futile. On the contrary, the whole point of further review is to challenge the correctness of the result reached on a lower level of review. And, in any event, there is no futility exception to the exhaustion requirement. *See Booth v. Churner*, 532 U.S.

731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). Thus, under *Booth*, even futile claims must be exhausted under § 1997e(a) before filing a § 1983 complaint." *Jones v. Douglas*, 108 Fed. Appx. 254, 256 (6th Cir. 2004); *see also*, *Ingram v. Gonzales*, 501 F. Supp. 2d 180, 184 (D.D.C. 2007) (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000)).

Second, plaintiff argues that further exhaustion beyond Step I was not required because the Policy Directive "does not say a prisoner <u>must</u> or <u>shall</u> appeal the rejection to exhaust. It simply states that he <u>may</u> if he/she so chooses." Pl.'s Resp. to Def.s' May 6, 2010 Mot. to Dismiss, at 4-5. However, § 1997e(a) does not require a prisoner to exhaust all "mandatory" remedies; it requires him to exhaust all "available" remedies. Even if a Step II and Step III appeal is not mandatory, it was available to him, and thus required to be exhausted. As the Sixth Circuit has explained in rejecting a similar claim:

> Owens argues that he was not required to exhaust the classification appeals process to meet the PLRA's exhaustion requirement because the requirement only applies to "mandatory remedies," and the classification appeals process was not "mandatory." This argument misconstrues the PLRA and this court's precedent. Although a remedy must be "available" in order for a prisoner to be required to pursue it to exhaust his claim, this does not mean that the prison must require the prisoner to exhaust his remedies for the remedy to be "available." Generally, the prisoner would be free to choose not to exhaust his remedies; he would only be required to do so if he wants to file a complaint regarding the matter in federal court. Therefore, the permissive "may appeal a classification action" language in APP 401.08 is irrelevant to the consideration of the exhaustion issue.

*Owens v. Keeling*, 461 F.3d 763, 770 n.4 (6th Cir. 2006) (citations omitted). Thus, even if Step II and Step III appeals are not "mandatory" in the sense that plaintiff could choose not to pursue these remedies, they remained available to him and he was "required to do so if he want[ed] to file a

10

complaint regarding the matter in federal court." *Id*. In short, at the time the complaint was filed, plaintiff had not exhausted his claims by pursuing them at each step of the administrative grievance process. Accordingly, defendants are entitled to dismissal of the complaint without prejudice to plaintiff refiling if he is able to show proper exhaustion.

D.      *Conclusion*

In view of the foregoing, the Court should grant the medical defendants' motion to dismiss for failure to exhaust (docket #45) and the MDOC defendants' motion for summary judgment on the basis of lack of exhaustion (docket #84). Accordingly, the Court should dismiss the action without prejudice to plaintiff refiling if and when he is able to show proper exhaustion. If the Court accepts this recommendation, the Court should also deny as moot the medical defendant's motion to dismiss on the merits (docket #33) and plaintiff's motion for summary judgment on the merits (docket #57).

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served

upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                          s/Paul J. Komives
                                          PAUL J. KOMIVES
                                          UNITED STATES MAGISTRATE JUDGE

Dated:1/14/11

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on January 14, 2011.
>
>                             s/Eddrey Butts
>                             Case Manager